UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 05-10167-JLT |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Ronald Hazel | ) |  |
| a/k/a Ronny Hazel | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |

GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in support of its request that the Court

sentence the defendant Ronald Hazel to twenty-four months in prison, the low end of the

guideline sentencing range ("GSR"), as is described in paragraph 109 of the Presentence

Report ("PSR"), a fine in the range of $4,000 to $40,000, a period of two years supervised

release, the mandatory special assessment of $200, and restitution to the Internal Revenue

Service in the amount of $311,293. In addition, the government requests that as a special

condition of supervised release, the defendant be ordered to cooperate with the Internal

Revenue Service to determine his total tax liability and establish a payment plan for the

outstanding taxes owed.

I. Background

On August 17, 2005, the defendant pled guilty to a two count criminal Information

charging him with tax evasion in violation of 26 U.S.C. 7201 for the year 1998 and Sale

of Drug Paraphernalia in violation of 21 U.S.C. 863. These offenses stem from Hazel's

operation of two wholly owned corporations in Provincetown, Massachusetts. As described in the Presentence Report, these businesses sold, in addition to other items, a wide variety of illegal drug paraphernalia. In addition, neither corporation filed a tax return for the for the years 1996, 1997 and 1998.

II. Sentence of Imprisonment Appropriate

The Guideline range for Mr. Hazel's conduct is 24-30 months based on an adjusted offense level of 15 and a Criminal History Category III. Hazel deserves a sentence of imprisonment at the low end of the guidelines because his criminal conduct was serious and ongoing over an extended period of time and because of his significant criminal history.

The United States Sentencing Commission has recognized the need to impose sentences in criminal tax cases that afford adequate deterrence and promote respect for the tax laws:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. § 2T, introductory comment. General deterrence is an appropriate and important consideration in criminal tax cases. A sentence of imprisonment would both reflect the gravity of Hazel's offense and foster deterrence.

Moreover, this is not Mr. Hazel's first encounter with the criminal justice system.

2

As detailed in the Presentence Report at pages 6-13, Mr. Hazel has a lengthy criminal history and is in Criminal History Category III.

### III.    Downward Departures Not Warranted

The defendant argues three bases for downward departure. The government opposes each. First, defendant argues for a departure based on U.S.S.G. § 5H1.1 ("Age") and § 5H1.3, ("Mental and Emotional Conditions"). As the Guideline sections note, either age nor mental and emotional conditions are relevant in determining whether a departure is warranted. Moreover, although defendant does not specifically cite § 5H1.4 ("Physical Condition, Including Drug or Alcohol Dependence or Abuse"), the defendant submitted several letters outlining his health status. The government has submitted these letters to the Federal Bureau of Prisons ("BOP") for review. The BOP's response, enclosed as Attachment A, indicates that should a sentence of imprisonment be imposed, the BOP will be able to adequately care for the defendant.

The third letter submitted by the defendant, dated December 21, 2005 and signed by John A. Buchler, D.M.D., M.D. indicates that Mr. Hazel will likely require additional surgery on his jaw in mid to late February, 2006. Should the Court order a sentence of imprisonment, the government has no objection to a voluntary surrender date set at a reasonable time after the surgery, such as six months. Counsel for the government has spoken with Michael Tafelski, Deputy Regional Counsel for the Federal Bureau of Prisons, on this issue. Mr. Tafelski indicated that such an arrangement is not an uncommon practice.

Secondly, defendant argues for a departure based on outstanding military service

3

pursuant to U.S.S.G. § 5H1.4. The guidelines state that military service is not ordinarily relevant in determining whether a departure is warranted. U.S.S.G. § 5H1.4. The government acknowledges that Mr. Hazel's military service was indeed both heroic and exemplary. However, recognition of that fact is best served by imposing a sentence at the low end of the guideline range.

Third, the defendant seeks a departure pursuant to United States v. Olbres, 99 F.3d 28 (1st Cir. 1996), claiming that hundreds of people would be out of work if the defendant is unavailable to maintain his business. Two of the defendants sons, (aged 31 and 27) assist Mr. Hazel in the operation of his business. Defendant indicates in his submissions to the PSR that he has been training his sons to take over his business. In addition, the PSR notes that the defendant's friend, Erica Cole, has returned to the Cape Cod area to manage the defendant's retail store since April 2005. Thus, unlike the situation in Olbres, it does not appear that defendant's business will fail if he is imprisoned.

## CONCLUSION

For the reasons noted above, the United States respectfully requests the Court

sentence the defendant, Ronald Hazel, to a term of imprisonment of t24 months, the low

end of the guidelines, followed by a period of supervised release including a special

condition that the defendant cooperate with the IRS as outlined above, a fine in the range

of $4,000 to $40,000 and order restitution to the IRS, and a mandatory special assessment

of $200.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    _____/s/_____
John P. McAdams
Trial Attorney, U.S. Dept. of Justice
Tax Division

Dated: January 3, 2006

## CERTIFICATE OF SERVICE

I certify that I am today serving a copy of this pleading on the defendant's attorney, listed below, by facsimile.

John M. Moscardelli, Esq.
Peters & Moscardelli
8 Winter Street, Suite 12
Boston, MA 02108
Fax: 617-723-6068

Dated: January 3, 2006

_____/s/_____
John P. McAdams

## ATTACHMENT A



**U.S. Department of Justice**

Federal Bureau of Prisons

Northeast Regional Office

*VIA FAX*

U.S. Custom House
2nd & Chestnut Streets - 7th Floor
Philadelphia, PA. 19106

January 3, 2006

John McAdams, Esquire
U.S. Department of Justice
Tax Division
Northern Criminal Enforcement Section
Washington, DC 20004

     Re:   <u>United States v. Ronny Hazel</u>

Dear Mr. McAdams:

     Thank you for your recent inquiry concerning the Federal Bureau of Prisons (BOP) ability to provide adequate health care for federal prisoners with significant, acute or chronic medical conditions. Specifically, you have asked whether, based on the available information, the BOP can provide the necessary and appropriate care for Mr. Hazel should he be incarcerated in a federal correctional facility.

     I am only aware of Mr. Hazel's medical condition as described by the documents you provided specifically, three letters from Mr. Hazel's treating physicians. The aforementioned documents suggest that Mr. Hazel has Stage IV invasive squamous cell carcinoma at the base of tongue, radical neck dissection with radiation and osteoradionecrosis (necrosis of bone following irradiation) and multiple infections of the right mandible and extensive bone grafting.

     If committed to the custody of the BOP, Mr. Hazel will be reviewed for designation by the Bureau of Prisons Office of Medical Designations. At that time, a determination would be made as to the appropriate facility, either a medical referral center (MRC) or a general population institution, in which to designate him. Medical referral centers are prisons which provide in-patient care to seriously ill inmates. The BOP has six of these centers throughout the United States, including a MRC which provides a wide-range of oncology services. General

John McAdams, Esquire
January 3, 2006
Page Two


population institutions are non-medical prisons.  However, every
general population institution is equipped to deal with medically
ill inmates.

    Upon Mr. Hazel's arrival, health services staff would meet
with him, perform a physical examination, and set up a treatment
plan to meet his medical needs.  Based on Mr. Hazel's medical
history he will be placed in a chronic care clinic, so that his
medical condition is closely monitored and treated. In addition,
each BOP institution provides dental care and treatment to
inmates.  Moreover, the BOP has an extensive formulary which can
provide Mr. Hazel with the medications he needs to control
medical conditions.  Inmates are given their medication on a
daily basis as many times as medically required.  Depending on
the type of medication and the institution, inmates either
receive their medication through pill line, or in the
alternative, by maintaining a supply of medication in their cell.

    All BOP institutions are accredited by the Joint Commission
on Accreditation for Health Care Organizations, which sets the
medical, surgical, and psychiatric standards for hospitals
nationwide.  Additionally, each BOP institution contracts with
medical centers in the local vicinity to provide specialized
medical treatment.  These community medical centers offer
medically ill BOP inmates access to MRI, CT Scans, and other
diagnostic tools, as well as access to radiation and
chemotherapy.  Further, some institutions, based on their
location, have contracts with major medical centers.  When
medical emergencies and the need for surgical procedures arise,
these major medical centers offer the Bureau a wide range of
trained surgical specialists.

    It is my opinion that the BOP will be able to continue to
provide appropriate medical care for Mr. Hazel.  For your
convenience, I have attached a general outline to explain how the
Bureau designates prisoners with medical illnesses and to
describe the medical services available within the Bureau.  If I
can offer any further information in this matter, please do not
hesitate to contact me.

                              Sincerely,

                              Barbara J. Cadogan
                              Health Systems Administrator


Attachment

## OUTLINE OF MEDICAL DESIGNATION AND SERVICES PROCEDURES

The Federal Bureau of Prisons currently houses approximately 130,000 inmates.  The Bureau's Health Services Division administers the Office of Medical Designations and Transportation (OMDT) which is responsible for the timely and efficient designation and movement of inmates with health care needs.  OMDT medically designates approximately 20,000 inmates per year who have acute, chronic, terminal, and resolved medical illnesses. The BOP provides essential medical, dental, and mental health services to inmates by professional staff consistent with acceptable community standards.

To accommodate the hospitalization needs of our inmate population, the BOP has six in-patient Medical Referral Centers that have in-patient/chronic care beds which address the spectrum of inmate health care needs consistent with the community standard of medical care.  Additionally, we have an in-patient Psychiatric Referral Center which has 228 in-patient/chronic care beds for inmates with psychiatric illnesses that require hospitalization.  All of the Bureau's Medical Referral Centers are accredited by the Joint Commission on Accreditation for Health Care Organizations (JCAHO) which sets the medical, surgical, and psychiatric standards for hospitals nationwide.

Each non-medical federal prison is staffed by physicians, dentists and other health care providers such as physician assistants/nurse practitioners, nurses, pharmacists, and laboratory and x-ray personnel.  Additionally, our institutions make use of consultants in the local communities to provide medical specialty care to the inmate population.  Our institutions routinely care for inmates with moderate and severe illnesses such as hypertension, diabetes mellitus, thyroid disorders, arteriosclerotic heart disease, post heart attack and stroke patients, pacemaker patients, congestive heart failure patients, seizure disorders as well as patients with HIV infection, AIDS and psychiatric illness.  Non-medical institutions additionally care for inmates requiring kidney dialysis, emergency medical care, inmates with terminal illnesses, and inmates requiring non-inpatient psychiatric care. In addition to medical and psychiatric resources available at Bureau of Prisons' institutions, the Bureau has extensive access to such resources in the community.

When OMDT is notified of a newly sentenced inmate, all documentation submitted to the office by the courts, federal prosecutors, and defense attorneys is reviewed and an appropriate designation to one of our non-medical institutions or to one of

**OUTLINE OF MEDICAL DESIGNATION AND SERVICES PROCEDURES (cont.)**

our Medical Referral Centers is made.  OMDT designates inmates to
the institution that best matches the medical and psychiatric
care needs of the inmate.

The BOP routinely cares for inmates with minor to severe
psychiatric illness, HIV, AIDS, chronic illness, and infectious
disease patients in both our general population institutions as
well as our Medical Referral Centers consistent with the
community standard of care.  The BOP provides medical care to
more than 40,000 inmates, per year, with chronic medical and
psychiatric conditions.